UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81719-CIV-MIDDLEBROOKS

INTERNAVES DE MEXICO s.a. de C.V.,

Plaintiff,

v.

ANDROMEDA STEAMSHIP
CORPORATION, AMERICAN
NAVIGATION, INC., PEGASUS LINES,
LTD. S.A., PANAMA, and JAMES
KARATHANOS,

Defendants.
_____/

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION

THIS CAUSE comes before the Court upon Defendants Andromeda Steamship Corporation, American Navigation, Inc., Pegasus Lines, Ltd. S.A., Panama, and James Karathanos' (collectively, "Defendants") Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss ("Motion"), filed on January 13, 2017. (DE 20). Plaintiff Internaves de Mexico s.a. de C.V. ("Internaves") filed a Response in opposition on February 3, 2017 (DE 28), to which Defendants replied on February 10, 2017 (DE 30). For the reasons stated below, the Motion is granted in part and denied in part.[1]

## BACKGROUND

Internaves filed a Complaint against Defendants on October 12, 2016 (DE 1, hereinafter "Complaint" or "Compl."), alleging breach of contract, conversion, and fraud (id. at ¶¶ 9-36)

---

[1] Because I agree that the Parties must arbitrate their dispute, I do not reach Defendants' arguments for dismissing the Complaint.

stemming from a contract to transport an electrical transformer from Brazil to Mexico (*id.* at ¶ 6). Defendants contend that the relationship between the Parties is governed by a contract, or "Charter Party," that provides for arbitration of all disputes in London, England and under English law. (DE 20 at 2). Plaintiff disputes where and under what law the Charter Party provides for arbitration to take place. In addition, Plaintiff also argues that the arbitration clause in the Charter Party was induced by fraud and therefore invalid. (DE 28 at 3). On February 24, 2017, the Court issued an order staying proceedings pending resolution of the instant Motion. (DE 33).

## LEGAL STANDARD

Federal law strongly favors agreements to arbitrate, particularly in international commercial transactions. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-20 (1974). Indeed, the Eleventh Circuit has held that there is ample precedent "in favor of freely-negotiated contractual choice of law and forum selection provisions . . . with special force in the field of international commerce." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011). When enforcing an arbitration provision, a court may direct the case to arbitration at any time before trial. *See Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009).

International arbitration agreements are subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). Both the United States and England have adopted the Convention, *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1301 (11th Cir. 2000), the United States through its incorporation into the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208. *Thomas*, 573 F.3d at 1116; *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213, n.9 (11th Cir. 2011). A court having jurisdiction under the Convention "may direct that arbitration be held in accordance with the

agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

In light of the policies favoring arbitration, courts should conduct "a very limited inquiry" in deciding whether to compel arbitration pursuant to the Convention. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted). To compel arbitration under the Convention, four jurisdictional prerequisites must be satisfied: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) there is at least one party to the agreement who is not an American citizen. *See id.* at 1294, n.7. A court "must order arbitration unless (1) the four jurisdictional prerequisites are not met or (2) one of the Convention's affirmative defenses applies." *Id.* at 1294-95 (citations omitted). The Convention recognizes the following affirmative defenses to an arbitration agreement: that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Lindo*, 652 F.3d at 1276 (citing New York Convention, ar. II(3)).

Finally, because the United States adopted the Convention through the FAA, federal courts apply "FAA principles [to] guide the analysis" of the parties' intent to arbitrate when evaluating motions to compel arbitration pursuant to international arbitration agreements. *Princess Cruise*, 657 F.3d at 1213, n.9.

## DISCUSSION

There is no dispute among the Parties that the four jurisdictional prerequisites have been met. First, Defendants invoke the Charter Party's arbitration agreement and Internaves admits in its Response brief that the Charter Party contains an arbitration clause. (DE 28 at 3). Thus, there

3

is an agreement in writing to arbitrate the dispute.[2] Second, although the Parties disagree as to where the Charter Party calls for arbitration to be held, the two ostensible options – New York or London – are both located within countries that are signatories to the Convention. *S & Davis Int'l*, 218 F.3d at 1301.[3] Third, as the Complaint itself alleges, the present dispute arises out of a commercial legal relationship, since the underlying transaction involved Internaves' retention of Defendants, the shipping agents, to "carr[y] [] an electrical transformer from Brazil to Mexico." (Compl. at ¶ 6). Fourth and finally, there are several Parties to this action who the Complaint alleges are not American citizens. These include Internaves itself, which is a Mexican corporation (*id.* at ¶ 1), Defendant Pegasus Lines, Ltd. S.A., Panama, "believed to be" a Panamanian corporation (*id.* at ¶ 4), and possibly also Andromeda Steamship Corporation, described as a corporation "organized under the laws of a state or country other than Florida" (*id.* at ¶ 2).

The heart of the disagreement is whether the arbitration clause is voided by the defense of fraud in the inducement. As previously discussed, the Convention recognizes the defense that an arbitration agreement is "null and void." *Lindo*, 652 F.3d at 1276. The Eleventh Circuit has

---

[2] Internaves does not argue that the multiplicity of arbitration "clauses" and ambiguities in the Charter Party (*see infra*) negates the existence of a definitive arbitration clause, only that various contract defenses – external to the text – render the clause inoperative. I therefore do not pursue this inquiry *sua sponte*.

[3] I will address below why neither of these two locations is available. As at least two courts have hinted, there is a tension between upholding a requirement that the parties must specify a location for arbitration in a Convention signatory state and then ordering arbitration within the district's own territory because of uncertainty in the forum location. That tension has not prevented these courts from pursuing this very path. *See Jain v. de Mere*, 51 F.3d 686, 691 (7th Cir. 1995) (acknowledging language from cases establishing requirement but nevertheless finding that § 4 granted district court such power); *Control Screening LLC v. Tech. Application & Prod. Co., HCMC-Vietnam*, 687 F.3d 163, 170 (3d Cir. 2012) (holding that "forum selection portion of arbitration clause" could be voided by mutual mistake, even while remaining portions of clause could be upheld based on evidence in contract of parties' intent to arbitrate). Here, there is no doubt that the contract text contemplates arbitration in *some* location.

4

clarified that an agreement can be found null and void "only where it is obtained through those limited situations, such as *fraud*, mistake, duress, and waiver, constituting standard breach-of-contract defenses that can be applied neutrally on an international scale." *Id.* (citing *Bautista*, 396 F.3d at 1301-02) (emphasis added). Thus, a fraud defense is available, at least in theory.[4]

Nonetheless, because "FAA principles" guide the Court's analysis, *Princess Cruise*, 657 F.3d at 1213, n.9, it is not enough for Internaves to allege merely that *some* type of fraud was involved in the underlying transaction. The Supreme Court has repeatedly stressed that an arbitration agreement is severable from the rest of a contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). That is because an arbitration clause may, depending on its scope, delegate to the arbitrator "gateway" questions, "such as whether the parties have agreed to arbitrate" in the first instance (i.e., the question of "arbitrability") or whether any defenses to the contract defeat its operation. *Rent-A-Center*, 561 U.S. at 68-69. When the arbitration clause encompasses the issue of contract defenses, the "severability doctrine" insists that a federal court's treatment of fraud claims be bifurcated. "[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint*, 388 U.S. at 403-04.

---

[4] Conversely, Internaves' public policy and unconscionability defenses to arbitration fail even before reaching the facts. The Convention does not recognize a public policy defense because "each nation operates under different statutory laws and pursues different policy concerns." *Lindo*, 652 F.3d at 1278. Neither does it permit an unconscionability defense, since "it is doubtful that there exists a precise, universal definition of the unequal bargaining power defense that may be applied effectively across the range of countries that are parties to the Convention." *Id.* at 1277 (quoting *Bautista*, 396 F.3d at 1302).

The threshold question, then, is what is the scope of the arbitration clause in this case? Although the Parties dispute which of two contender clauses determines the arbitration's location, each says essentially the same thing when it comes to the extent of the arbitrable issues. Section 19(a) states that *"any dispute arising out of this Charter Party* shall be referred to arbitration in London . . . ."  (DE 1-8 at 4) (emphasis added). Similarly, Section 19(b) provides that *"should any dispute arise out this Charter Party*, the matter in dispute shall be referred to three persons at New York . . . ." (*Id.*) (emphasis added). The present dispute centers on Defendants' performance under the contract by allegedly failing to deliver a vessel to transport an electrical transformer. "A dispute arising pursuant to or in any related to" a contract "includes a dispute over the terms or performance" of the contract. *Int'l Underwriters AG v. Triple I: Int'l Inv., Inc.*, 533 F.3d 1342, 1345 (11th Cir. 2008). Only disagreements that "are not related – with at least some directness – to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). Because the subject of the present litigation concerns Defendants' performance of a contractual duty – something that was not only foreseeable under the contract but also was Internaves' motivation for executing it – the severability doctrine clearly applies. As a result, only fraud claims targeting the arbitration agreement individually can remove this dispute from arbitration.

The Complaint's only reference to fraud occurs in Count IX against Defendant James Karanthanos, in which Internaves accuses him of misrepresenting "the material fact that Defendant Pegasus Lines, Ltd., S.A. had a vessel available to transport [Plaintiff's] cargo from Brazil to Mexico." (Compl. at ¶ 33). Karanthanos' misrepresentation purportedly induced Internaves' reliance and performance under the Charter Party. (*Id.* at ¶ 35). In addition,

6

Internaves argues in its Response that it was fraudulently induced to enter into the arbitration agreement specifically. (DE 28 at 3).[5] Concerning the nature of the fraud, Internaves says, "[t]he arbitration clause negotiated herein was thought to be with a viable entity . . . and not a Panamanian shell corporation . . . ." (DE 28 at 3).

Neither of these allegations invalidates the arbitration clause. At most, Karanthanos' alleged misrepresentation regarding ship availability can be construed as a fraudulent inducement for Internaves to execute the contract *as a whole*. It touches on the services that Defendants offered and supposedly failed to provide, not the design of the arbitration clause. But "challenges [to] the *performance* of the contract[]," rather than its "*existence*" is not a question of arbitrability. *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1096 (11th Cir. 2003) (emphasis in original); *Triple I*, 533 F.3d at 1345. Internaves' Response claim is facially more promising but upon closer inspection, quickly falls apart. If the fraud lay in one of the Defendants disguising its identity, that fact still suggests that the fraud extended to the formation of the contract as a whole. Internaves certainly does not suggest that it was, or believed itself to be, negotiating with a legitimate entity when discussing other contractual provisions. Where a party "articulates no arguments that differentiate between alleged fraud in the formation of the contract and fraud specifically in the inclusion of an arbitration provision," it has not implicated a question that the district court, rather than the arbitrator, can address in the first instance. *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1208 (11th Cir.

---

[5] Although the Eleventh Circuit has not decided this issue, the Ninth Circuit persuasively explains that the party opposing arbitration may raise the invalidity of the arbitration clause for the first time when responding to a motion to compel arbitration. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001-02 (9th Cir. 2010) (observing that in cases where plaintiff's claims are rooted in breach of contract, the validity of the arbitration clause "would be unrelated to plaintiff's principle prayer for relief" and unlikely to be referenced in the complaint). Thus, contrary to Defendants' suggestion in their Reply brief, Internaves need not have anticipated and rebutted arguments in favor of compelling arbitration in its Complaint.

7

2015). Thus, the Response claim also fails. Since Internaves challenges the entirety of the agreement, and not the making of the arbitration agreement in particular, an arbitrator must be the one to decide the fraud allegation.

The only remaining issue is where the arbitration should take place. Chapter 1 of the FAA allows arbitration to occur only "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Thus, in the general FAA context, a district court has no jurisdiction to order arbitration to take place elsewhere. *Jain v. de Mere*, 51 F.3d 686, 691 (7th Cir. 1995). Conversely, in connection with international arbitration agreements, Chapter 2 of the statute "empowers the district court 'to direct that arbitration be held . . . at any place therein provided for, whether that place is within or without the United States." *Bauhinia Corp. v. China Nat'l Machinery & Equip. Import & Export Corp.*, 819 F.2d 247, 250 (9th Cir. 1987) (quoting 9 U.S.C. § 206); *see also Jain*, 51 F.3d at 591 (explaining that to the extent the Convention and FAA conflict in this regard, the former governs). Therefore, this Court has the authority to order arbitration to take place in a foreign jurisdiction – but only when the arbitration's location has been "provided for." 9 U.S.C. § 206.

Part I of the Charter Party contains various fields laying out the specifics of the order. (DE 1-8 at 1). Box 25 therein contains language designating a place of arbitration and also cross-referencing subsequent clauses:

> Law and Arbitration (state 19(a) 19(b) or 19(c) of Cl 19 if 19(c) agreed
>   also state Place of Arbitration (if not filled in 19(a) shall apply) (Cl 19)
> **London arbitration, English Law**

(*Id.*). Part II contains more fully articulated contract terms, including a provision on "Law and Arbitration" (Section 19). (*Id.* at 4-5). However, as with other elements of Part II, various subsections of Section 19 have been struck through. The reason for this appears to be, as an

8

asterisk explains, that the subsections within "are alternatives" to each other. (*Id.* at 5).[6] The author of the contract left untouched the provision calling for arbitration in New York "in accordance with the rules of the Society of Maritime Arbitrators, Inc.", (*id.* at 5, 19(b)), but struck the section designating London as the site of arbitration (*id.* at 4, 19(a)). Clearly, Part I and Part II are in conflict with each other.

This conflict is compounded by ambiguities in the very provisions ostensibly designed to resolve internal inconsistencies. The signature page calls for the selection made in Part I to supersede that made in Part II. The text states, in relevant part, "[i]n the event of a conflict of conditions the provisions of Part I shall prevail over those of Part II to the extent of such conflict." (*Id.* at 6). But significantly, one of the other subsections of Section 19, subsection (c), which also provides for the supremacy of Part I, has been struck through.[7] In light of that alteration, does the signature page's rule still apply and should Box 25 even be consulted?

The Court will not venture to untangle these knots. The question of how to resolve forum selection ambiguities in a valid arbitration clause is, as far as the Court can tell, an issue of first impression in the Eleventh Circuit. Other circuits have, however, dealt with this issue. The leading case on the subject is *Bauhinia Corp. v. China National Machinery*, 819 F.2d 247 (9th Cir. 1987). There, the court was confronted with a contract stipulating in one paragraph that arbitration must take place before a panel in Peking, China, but in a paragraph below left empty a blank space that had been provided to designate the site of arbitration. *Id.* at 248. Noting that "[t]he two paragraphs are mutually exclusive," the Ninth Circuit found the contract facially

---

[6] That same asterisk instructs the parties to "indicate" the agreed-to alternative in Box 25 of Part I. (*Id.* at 5).
[7] Subsection 19(c) states, "[a]ny dispute arising out of the Charter Party shall be referred to arbitration at the Place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern the Charter Party."

9

"ambiguous." *Id.* at 249. Moreover, there was no record evidence or textual clues to the parties' intent. *Id.* Thus, as a matter of law, the parties "intended to leave the issue open." *Id.* Having found that the contract failed to specify a forum for arbitration, the Court proceeded to the issue of where to compel arbitration. The Court ultimately upheld the district court's order compelling arbitration before the AAA in the Eastern District of California, where the lower court sat. *Id.* at 250. The Ninth Circuit relied on the fact that § 206 of the FAA permitted district courts to compel arbitration outside of their territorial jurisdiction only when the arbitration agreement "provided for" a place, which the agreement in question – through its ambiguity – did not. *Id.* As a consequence, § 206's exception to jurisdictional limits did not apply, and the district court's only legitimate option – in the absence of the party's mutual agreement otherwise – was to fall back on § 4 and order arbitration in its own district. *Id.*; *accord Control Screening LLC v. Tech. Application & Prod. Co., HCMC-Vietnam*, 687 F.3d 163, 170-71 (3d Cir. 2012) (upholding identical district court order where parties mistakenly provided for arbitration to take place before "non-existent" European entity); *Jain*, 51 F.3d at 690 (reversing district court finding that it could not compel arbitration in its own territory because "§ 4 is clearly applicable when an arbitration agreement fails to specify a place for arbitration").

*Bauhinia* and the cases related to it are on all fours with respect to the facts of this case. As discussed, the Charter Party contains contradictory provisions on the arbitration forum and is therefore ambiguous. Under such circumstances, the Court lacks jurisdiction to compel arbitration in either New York or London. Instead, the Parties shall have the opportunity to select a forum and panel by mutual agreement. If the Parties cannot settle on an arbitrator, then the Court shall order arbitration to be held before the American Arbitration Association (AAA) in Miami, Florida, using that organization's rules.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendants Andromeda Steamship Corporation, American Navigation, Inc., Pegasus Lines, Ltd. S.A., Panama, and James Karathanos' Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss (DE 20) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent it seeks to compel arbitration. The Motion is **DENIED** to the extent it seeks to compel arbitration in London, England under English law. The Parties shall, **by April 5, 2017**, advise the Court whether they have agreed to an arbitration panel and forum. Should the Parties fail to agree, I will compel arbitration before the AAA in Miami, Florida by separate order.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida, this 28 day of March, 2017.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record